ESTATE OF MARY M. BENNETT, VINCENT J. CISSELL, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bennett v. Commissioner
Docket No. 8197-76.
United States Tax Court
T.C. Memo 1980-292; 1980 Tax Ct. Memo LEXIS 295; 40 T.C.M. (CCH) 855; T.C.M. (RIA) 80292; August 4, 1980, Filed *295 Held, failure to file timely estate tax return not due to reasonable cause. Gene F. Reardon, for the petitioner. Fredrick B. Strothman, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $51,509.22 in petitioner's estate tax and an addition thereto pursuant to section 6651(a)(1) [1] of $12,877.30. [2]
*296 Due to concessions, the only issue presented for our consideration is whether petitioner's failure to file a timely Federal estate tax return and pay the amount shown as due on the return was due to reasonable cause and not due to willful neglect. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Mary M. Bennett (hereafter decedent) died on November 19, 1970. Her nephew, Vincent J. Cissell, was named in her will as executor of her estate and was appointed executor by the Colorado courts. As executor, he filed a Federal estate tax return with the District Director, Internal Revenue Service, Denver, Colorado, on November 18, 1974. Cissell earned his college degree in accounting and minored in philosophy and business. Cissell operated his father's produce company for a short time after graduating college but did not enjoy the work and went to law school for a year and a half before starting his own ambulance service business in 1963. In 1968 he expanded his business into ambulance manufacturing and later developed the business into a complete emergency *297 service system, providing in-home therapy for patients under oxygen therapy treatment, wheel chair delivery service, and emergency ambulance service. The oxygen therapy treatment and wheel chair service are operated through separate corporations in which Cissell is president and majority shareholder. James Sweeney had been decedent's family attorney since 1958 and had been engaged to handle the estate of decedent's husband (James Bennett) who had died only 7 or 8 months prior to decedent's death. Decedent was executrix of her husband's estate, but at her death the estate had not yet been closed and Cissell was appointed executor. Sweeney was retained by Cissell as attorney for the Estate of James Bennett and was also hired by Cissell to be the attorney for decedent's estate. In the course of administering decedent's estate, Cissell asked Sweeney what reports and returns were due and relied on him to fill out the necessary returns and reports. Sweeney told Cissell that a Colorado Inheritance Tax Report was required and that he needed an inventory and valuation of the assets in the estate before he could file the Colorado Inheritance Tax returns. [3] Cissell provided the raw *298 information needed to prepare the reports. Cissell signed a Colorado Inheritance Tax Application which stated at paragraph 14 as follows: "Will Federal Estate Tax Return be filed?" "Yes." Later, on April 23, 1974, Cissell signed and swore to a Petition of Executor for Order of Partial Distribution, which had been prepared and signed by Sweeney and filed with the District Court of Arapahoe County in the estate proceedings of Mary M. Bennett. Two of the statements contained in that petition were: 2. The Colorado Inheritance tax has been settled and paid in full. 3. The Federal estate tax for this estate has been filed and the tax due has been paid. Attached to the petition was a certification in which Cissell again swore that he made the certification on his behalf; "that he has read the foregoing Petition and knows the contents thereof and the same is true of his own knowledge." Sweeney never told Cissell that a Federal estate tax return was due, however, *299 and believed that Cissell's accountant, George Smyth, was preparing the return. [4] Normally, though, as part of his responsibilities as attorney for an estate, Sweeney would prepare and file both the Federal estate tax return and the Colorado Inheritance Tax Return. Smyth has been Cissell's personal accountant since 1963 and has prepared his individual income tax returns since that time. He was also the bookkeeper for the ambulance service and had been engaged as accountant for some of Cissell's other businesses, although he did not prepare tax returns for Cissell's corporations. At Sweeney's direction, Smyth prepared the fiduciary income tax returns for decedent's estate for all the years the estate was open (1970-1975). However, Smyth was never directed by either Cissell or Sweeney to prepare the estate tax return. OPINION Petitioner contends that where the executor of an estate does not know of the requirement *300 to file a Federal estate tax return and engages counsel to advise him as to what returns and reports must be filed, reasonable care has been met. The facts in this case are disputed. Cissell maintains that he did not know that a Federal estate tax return was due until early November 1974. At about that time, he was ready to distribute the assets to the heirs and close the estate. He then requested an accountant to review the estate accounting to ensure a proper distribution. When the accountant reviewed the figures he asked Cissell for the Federal estate tax return. It was not until then, Cissell contends, that he knew that a return was due; the return then was immediately prepared and filed. Sweeney testified that he was not aware that the return had not been filed until this time. We believe that Cissell's testimony has been substantially impeached. Smyth testified that he was paid on September 8, 1973, for having prepared the estate tax return. Moreover, Cissell signed a Colorado Inheritance Tax Application which stated at paragraph 14 as follows: "Will Federal Estate Tax Return be filed?" "Yes." Later, On April 23, 1974, Cissell signed and swore to a Petition of Executor *301 for Order of Partial Distribution, which had been prepared and signed by Sweeney and filed with the District Court of Arapahoe County in the estate proceedings of Mary M. Bennett. Two of the statements contained in that petition were: 2. The Colorado Inheritance tax has been settled and paid in full. 3. The Federal estate tax for this estate has been filed and the tax due has been paid. Attached to the petition was a certification in which Cissell again swore that he made the certification on his behalf; "that he has read the foregoing Petition and knows the contents thereof and the same is true of his own knowledge." In view of Cissell's business and educational background, we find it hard to believe that he only skimmed the documents and was unaware of the statements contained therein. Even if we were to accept Cissell's testimony at face value, we disagree with his statement of the law and would still find petitioner liable for the additions. It is well established that ignorance of the necessity to file a tax return will not of itself relieve a taxpayer of the section 6651(a) penalty. , affd. on this *302 issue . Where a taxpayer relies upon a tax adviser to inform him that a return is not necessary, he has done all that can reasonably be expected. Thus, once a taxpayer has used reasonable care to ascertain if a return is required, his inquiry has ended and reliance on a competent professional meets this burden where the professional advises no return is due. ; , affd. ; , affd. , cert. denied . This is so even where the taxpayer simply tells the adviser to prepare all necessary returns and provides him with the necessary information to do so, but has no reason to believe that a return should be filed (as where there is a complicated area of law), and a return is not filed. ; ; *303 . However, where the taxpayer knows that a return should be filed, mere reliance on an accountant or attorney to prepare and file a return is insufficient to show ordinary care. , affd. without published opinion ; , affd. ; , affd. , cert. denied . This is also true when the taxpayer, such as an executor, is under a duty to know that a return must be filed. ; Thus, the executor is required, at a minimum, to ascertain when the return is due [5] and to take appropriate steps to see that the obligation to file is fulfilled. , *304 affd. ; , affd. , cert. denied . See also . Cissell was not told that no estate tax return was necessary; rather the estate's attorney believed that Smyth was preparing it. We do not believe that passive reliance on an attorney by an executor to meet all of his legal obligations suffices to meet the standard of reasonable care. [6]
*305 In light of this record, we find that petitioner's failure to file a timely estate tax return (and pay the tax owed) was due to willful neglect. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect for the years in issue. ↩
2. At the time the return was filed and prior to the time the deficiency notice was mailed to petitioner, a section 6651(a)(2) penalty had already been assessed by the Internal Revenue Service Center. The deficiency notice included only the section 6651(a)(1) penalty computed as a percentage of the excess of the tax as then determined by the Commissioner over the amount previously assessed, which amount previously assessed had included the section 6651(a)(2) penalty. At trial, respondent contended that this Court lacked jurisdiction over the section 6651(a)(2) addition which had been previously assessed but not specifically referred to in the statutory notice. However, on brief, respondent conceded the jurisdiction issue.↩
3. The Colorado Inheritance Tax Application was due to be filed on or before November 19, 1971, but was not filed until May 18, 1972. The State of Colorado assessed a late filing penalty of $5 and that amount was paid.↩
4. Sweeney determined that James Bennett's estate was not required to file a Federal estate tax return, due to its small size. Accordingly, the Estate of James Bennett never filed a Federal estate tax return, but had filed a Colorado Inheritance Tax return.↩
5. One case has held that if the attorney for the estate filed the return late and the executor was uninformed as to the due date, reasonable care had been exercised if the executor had no reason to believe the return was overdue. . In Sheehan v. United States, an unreported case ( USTC par. 13,304), the court discussed Gray as holding that a penalty should never be imposed in a case in which the executrix does not have knowledge of the due date. We do not read Gray quite so expansively, and believe the Gray court did not hold that lack of knowledge would forgive late filing even where the executor was aware that the attorneys were not handling the situation properly. In any event, such difference is not relevant here. The Sheehan court held that the proper test is whether the executrix had evidence to believe that she should not rely upon her attorney to file the returns; whether a reasonable person would question her attorney as to when the estate tax return was due and when it would be filed. Even under these cases, a taxpayer is not absolved of all responsibility for filing a return. We believe a reasonably prudent taxpayer with Cissell's background should have been aware that a return was due and that inquiry should have been made as to whether it had been filed far in advance of November 1974; even under the Gray or Sheehan↩ tests, therefore, petitioner would be liable for the penalty for late filing. Under , affd. , as stated above, we have held that the taxpayer must at least ascertain when the return is due. If the taxpayer is told by his attorney a later due date than provided by the statute, however, reliance on this advice could be reasonable cause for late filing. , affd. . Cf. . 6. Petitioner relies on , to support his position. That case is distinguishable. There, the attorney actually advised the administratrix that the gross estate of the decedent ws less than the statutory exemption and that the filing of a Federal estate tax return was not required. Here, Cissell did not rely on his attorney's advice that no return was due, but rather, he relied on his simply to prepare all returns and reports.↩